# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**GENERAC POWER SYSTEMS INC.,**

 **Plaintiff-**
 **Counter-Claim Defendant,**

 **Case No. 10-C-0947**

 **-vs-**

**KOHLER CO.,**

 **Defendant-Counterclaimant.**

# DECISION AND ORDER

This matter comes before the Court on two separate motions. In commencing this action, Plaintiff Generac Power Systems Inc. ("Generac") alleges that Defendant Kohler Co. ("Kohler"), a competitor with Generac in the engine-driven electrical generator market, has infringed Generac's United States Patent No. 7,230,345 ("the '345 patent"). Generac claims that Kohler has been engaging in unfair competition with Generac by selling a line of generators that incorporates the exercise method created by Generac and used in the '345 patent. (Pl.'s Supp. Prelim. Inj., 20.) Kohler counterclaims that the '345 patent is invalid and unenforceable, and has submitted two reexamination requests to the United States Patent and Trademark Office ("PTO") to reexamine the '345 patent's validity.

Kohler now moves to stay litigation pending the reexamination of the '345 patent by the PTO. Generac moves for a preliminary injunction preventing Kohler from

"making, using, selling, and offering to sell generators that feature the method of exercising a generator protected by Generac's ['345 patent]." (Pl.'s Mot. Prelim. Inj., 1.) Generac has requested oral argument. Kohler does not believe further argument is necessary.

The motions are well-briefed and after providing a bit more background about the claims in this action, the Court addresses the issues. On October 20, 2010, Generac filed a complaint for patent infringement, under the patent laws of the United States, 35 U.S.C. §§ 271, 281, 283-285, against Kohler. Generac alleges that Kohler "has used, sold or offered to sell . . . generators that infringe each of the elements of one or more claims of the '345 patent . . . ." (Pl.'s Compl. ¶ 14.) Generac also claims that Kohler "directly and contributorily" infringed one or more claims of the '345 patent and induced infringement of one or more claims of the '345 patent. (*Id.* ¶¶ 15-16.) Kohler answered on November 24, 2010, raising multiple affirmative defenses, including that it had not infringed the '345 patent, that one or more claims of the '345 patent are invalid for failing to meet the conditions for patentability, and that the '345 patent is unenforceable due to Generac's inequitable conduct during the prosecution of the '345 patent. (Def.'s Answer 3, ¶¶ 1-4.) Kohler counterclaimed seeking declaratory judgment that it had not infringed, that one or more claims of the '345 patent is invalid, and that the '345 patent is unenforceable due to Generac's inequitable conduct. (*Id.* at 5, ¶¶ 5-10.)

## I. STAY LITIGATION PENDING REEXAMINATION

The Court first addresses Kohler's motion to stay litigation pending reexamination of the '345 patent. On December 23, 2010, Kohler filed an *ex parte* reexamination request, and submitted seven prior art references, asking that the PTO reexamine and cancel "all asserted claims of the patent-in-suit." (Def.'s Mot. Stay, 2.) On February 28, 2011, Kohler filed an *inter partes* reexamination request,[1] and submitted a "more extensive body of prior art obtained from various sources." (Def.'s Reply Stay, 2.) The PTO granted both Kohler's *ex parte* reexamination request, (Def.'s Mot. Stay, 2), and the *inter partes* reexamination request (Doc. 43.) Kohler now moves the Court to stay litigation pending the PTO's reexamination of the '345 patent.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *JAB Distribs., LLC v. London Luxury, LLC*, No. 09 C 5831, 2010 WL 1882010, at *2 (N.D. Ill. May 11, 2010) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The Court's power to control its docket includes "'the authority to order a stay pending conclusion of a PTO reexamination.'" *Id.*

---

[1]In an *inter partes* proceeding, a third-party that requests reexamination can file written comments with the USPTO addressing the patent owner's arguments. *Pac. Biosci. Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1066 n.3 (W.D. Wash. 2011)(citing 35 U.S.C. § 314(b)(2); *WABCO Holdings, Inc. v. Bendix Commercial Vehicle Sys., LLC*, No. 09–3179(DMC), 2010 WL 2628335, at *2 (D.N.J. June 28, 2010)). As a result, the third-party in an *inter partes* proceeding is estopped from asserting, in a later civil action, the invalidity of any of the claims that the USPTO deems valid. *Id.* (citing 35 U.S.C. § 315(c)).

Congress intended PTO reexamination to be a "useful and necessary alternative for challengers and for patent owners to test the validity" of patents in an "'efficient and relatively inexpensive manner.'" *Seaquist Closures LLC v. Rexam Plastics*, No. 08C0106, 2008 WL 4691792, at *1 (E.D. Wis. Oct. 22, 2008) (quoting H.R. Rep. No. 96-1307, Pt. I, at 4 (1980), *reprinted* in 1980 U.S.C.C.A.N. 6460, 6463). Reexamination allows courts to avoid "expending unnecessary judicial resources by attempting to resolve claims" which may be amended or narrowed by the reexamination process and the expertise of the PTO. *Id.* (citing *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808 MHP, 1993 WL 149994, at *2 (N.D. Cal. May 5, 1993)).

In determining whether to stay litigation pending reexamination, the Court weighs three factors: (1) whether litigation is at an early stage; (2) whether a stay will simplify the issues in question; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Id.* at *1 (citing *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05 CV 81 DF, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006)).

## A. Stage of the Proceedings

The first factor, whether or not the litigation is at an early stage, weighs in favor of granting a stay. Generac concedes that the litigation is at an early stage, but asserts that this does not weigh in favor of a stay. (Pl.'s Opp'n Stay, 10.) *But see Enprotech Corp. v. Autotech Corp.*, No. 88 C 4853, 1990 WL 37217, at *1 (N.D. Ill. Mar. 16, 1990) (denying motion for a stay where "[m]ost compelling, however, is the fact that discovery here is almost

completed and the case is set for trial"); *Oracle Corp. v. Parallel Networks, LLP*, No. 06-414-SLR, 2010 WL 3613851, at *2 (D. Del. Sept. 8, 2010) (denying a stay where "[t]he motion [for a stay] comes . . . years into the present litigation . . . Defendant moved for a stay only after 'test[ing] the waters'").

Generac cites *Wyeth v. Abbott Laboratories*, No. 09-4850 (JAP), 2011 WL 380902, at *3 (D.N.J. Feb. 1, 2011), which states that although the advanced nature of a case approaching trial may weigh against granting a stay, the opposite inference, "that a suit in the early stages should weigh heavily in favor of a stay," is not true. (Citations omitted). However, in *Wyeth,* the parties had already engaged in fact discovery, exchanged preliminary claim constructions, and filed their joint claim construction and pre-hearing statements when the motion to stay the litigation arose. *Id.*

In the instant case, the parties have not engaged in discovery, the Rule 16 scheduling conference has not been held, and no dates for discovery, claim construction proceedings, or the trial have been established. Additionally, Kohler filed its reexamination request and its motion to stay in a timely manner. "Neither the parties, nor the court, have invested the kind of resources that would render a stay pending reexamination untenable." *Pac. Biosci. Labs., Inc.*, 760 F. Supp. 2d at 1066; *see also Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 1:10 CV 1370, 2010 WL 4699870, at *4 (N.D. Ohio Nov. 12, 2010) ("[T]he Court finds that this factor weighs heavily in favor of granting a stay . . . This case is in a very early stage, and discovery has barely begun . . . [B]ecause the case is at such an early stage,

a stay of the entire case . . . is appropriate."); *JAB Distribs., LLC*, 2010 WL 1882010, at *4 ("'[T]he litigation is in its infancy,' which militates in favor of granting a stay), *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 435 (N.D.N.Y. 2007) (granting a stay where "[the] case is plainly in its infancy, the court not yet having conducted a Rule 16 conference or issued a case management schedule order"). Given the early stage of the proceedings, a stay pending the reexamination proceedings is appropriate.

## B. Simplification of the Issues

The second factor to be considered is whether the stay will simplify the issues. One purpose of reexamination is to eliminate or facilitate trial of a claim by providing the district court with the PTO's expert view. *Seaquist Closures LLC*, 2008 WL 4691792, at *1 (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)). Generac argues that reexamination will not resolve all of the issues, nor is it likely that all the reexamined claims will be cancelled. (Pl.'s Opp'n Stay, 7-9.)

Kohler cites PTO statistics indicating that although only 13% of *ex parte* reexamination certificates issuing in cases requested by third parties are cancelled, 63% of these claims reexamined by the PTO are amended or limited. Therefore, 76% of third party reexamination requests that the PTO reexamines are modified, amended, or affected in some way. (Def.'s Mot. Stay, 3.); *See also* United States Patent and Trademark Office, Ex Parte Reexamination Filing Data (March 31, 2011), http://www.uspto.gov/patents/EP_quarterly_report_March_2011.pdf. (last visited June 28, 2011.)

-6-

"Stays have been granted in numerous cases where reexamination would likely simplify, but not eliminate, all issues in the litigation." *Pac. Biosci. Labs.*, 760 F. Supp. 2d at 1064. *See also Progressive Cas. Ins. Co.*, 2010 WL 4699870, at *4 (stating "it is also likely at least some of the patent's claims will be changed upon reexamination . . . If claims are cancelled or changed . . . it would simplify the issues pertaining to defendants' arguments on invalidity based on prior art.") Reexamination may not resolve all issues in the case, however, it is statistically likely that one of the claims in question will be affected in light of the undisclosed prior art references asserted by Kohler. *See Seaquist Closures LLC*, 2008 WL 4691792, at *1.

Moreover, even if all the claims are not invalidated, the Court and the parties will benefit from the PTO's expert analysis in simplifying the issues for trial. "An important factor figuring into the stay equation is the desirability of drawing upon the expertise of the PTO regarding the complex areas of patentability implicated in this action." *Pass & Seymour*, 532 F. Supp. 2d at 436. "The patent reexamination procedure was intended to provide the federal courts with the additional expertise of the PTO," and "there are numerous advantages to the Court and the parties in issuing a stay pending the outcome of the PTO reexamination." *Perricone v. Unimed Nutritional Serv., Inc.*, No. CIV.A. 301CV512 (CFD), 2002 WL 31075868, at *1-*2 (D. Conn. July 18, 2002). The PTO reexamination could alleviate discovery problems related to the prior art, the reexamination record would likely simplify and limit the litigation, and issues, defenses and evidence will be more easily limited in pretrial

conferences after reexamination. *See id.* at *1. *See also JAB Distribs., LLC*, 2010 WL 1882010, at *4 (stating that "the PTO's expert analysis of prior art may simplify and/or facilitate resolution of the case whether or not the PTO is persuaded to amend or invalidate some or all of the claims or patents at issue." (Citation omitted.)) Findings made during the PTO's reexamination proceedings will simplify and narrow the issues in the action, regardless of whether the PTO invalidates some or all of Generac's claims.

Generac also asserts that Kohler's *ex parte* reexamination will not simplify the issues because there is "nothing preventing Kohler from rearguing the same prior art references being considered on reexamination." (Pl.'s Opp'n Stay, 7.) However, "[i]f Congress had thought that a third-party requester in an *ex parte* reexamination would receive two bites of the apple by being allowed to assert invalidity arguments in a later patent infringement suit, then it could have estopped the party in the same way that it does for *inter partes* reexaminations. Congress chose not to . . . Congress countenanced a scheme in which a patent's validity may come under attack in both a courtroom and the USPTO." *Pac. Biosci. Labs.*, 760 F. Supp. 2d at 1066 (citations omitted).

Kohler has also filed an *inter partes* reexamination request. The results of Kohler's *inter partes* request will be binding on the parties to this litigation. *See Seaquist Closures LLC*, 2008 WL 4691792, at *1. "[A]lthough the ability to litigate patent invalidity once the stay is lifted does reduce the potential for simplification, the benefits of simplification still accrue for any claims that the [PTO] cancels or amends." *Pac. Biosci. Labs.*, 760 F. Supp.

2d at 1066. Therefore, Kohler's ability to reargue the same prior art references that the PTO is considering does not weigh against granting the stay. The potential for the PTO to simplify the issues for trial, and the benefits to the Court and the parties from the expert analysis of the PTO, weigh in favor of granting a stay in the litigation. **C. Effect on the Parties**

The third, and final factor, the Court considers is whether a stay in the litigation will unduly prejudice Generac or present a tactical advantage to Kohler. Generac asserts that it will be subject to undue prejudice and irreparable harm, through price erosion and lost market share, if the litigation is stayed. (Pl.'s Opp'n Stay, 2.) In order to show undue prejudice, Generac must provide more than conclusory arguments about the adverse impact that Kohler's manufacturing and selling of the allegedly infringing product will have on its market share. *See Freedom Scientific, Inc. v. GW Micro, Inc.*, No. 8:08-cv-1365-T-33TBM, 2009 WL 2423095, at *2 (M.D. Fla. July 29, 2009).

Generac asserts that Kohler has captured 10 to 15% of the market for residential stand-by generators, and will not be able to recoup its losses if Kohler is allowed to sell and market the allegedly infringing generator. (Pl.'s Opp'n Stay, 2-3.) Although Generac does not provide evidence that Kohler's current position in the market is a result of its selling of the allegedly infringing product, Generac concludes that Kohler will garner market share at Generac's expense if it is allowed to sell the allegedly infringing generators. (*Id.*) *See JAB Distribs., LLC*, 2010 WL 1882010, at *3 ("While plaintiff contends that it is losing customers

and market share . . . due to Defendants' actions, it does not quantify the lost customers or market share").

Furthermore, "[s]hould [the] plaintiff ultimately prevail, it will be able to recover any damages it incurs as the result of [the] defendants' continued manufacture and sale of the allegedly infringing product." *Seaquist Closures LLC*, 2008 WL 4691792, at*2. *See also Graceway Pharm., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566, 577 (D.N.J. 2010) ("[L]oss of market share and price erosion are economic harms and are compensable by money damages.") Generac has failed to provide evidence of price erosion or lost market share and has an appropriate remedy at law. Therefore, granting of the stay will not cause Generac undue prejudice.

There is also no indication that Kohler is requesting the stay in an attempt to gain a tactical advantage. Generac does not contest Kohler's assertions that Kohler acted in a reasonable manner and timely filed its reexamination requests and the motion for a stay pending the outcome of those proceedings. Kohler requested the reexamination and filed its motion for a stay in a timely manner before the litigation advanced. Although delay in the litigation may occur, "[d]elay due to the reexamination process is not itself a reason to find prejudice against [the] plaintiff." *Progressive Cas. Ins.*, 2010 WL 4699870, at *3. Because a stay will not unduly prejudice Generac, and there is no indication that Kohler has requested the stay in an attempt to gain an unfair advantage over Generac, this factor weighs in favor of

granting a stay. A weighing of the three factors favors granting Kohler's motion to stay litigation pending reexamination of the '345 patent. Therefore, the motion is granted.

## II. PRELIMINARY INJUNCTION

The Court next addresses Generac's motion for a preliminary injunction. The Court "ordinarily should not grant both a preliminary injunction and a stay" because a preliminary injunction should not be granted if there is a "substantial issue of patent validity," and a stay should ordinarily not be granted unless there is a "substantial patentability issue." *See Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008); *see also, Automated Merch. Sys., Inc. v. Crane Co.*, 357 Fed. Appx. 297, 303 (Fed. Cir. 2009) ("Because it logically seems that there cannot simultaneously be a substantial issue of patentability and no substantial issue of patentability, stays pending reexamination are typically inappropriate in cases in which preliminary injunctions are appropriate").

Although "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted," *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) (citing *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991)), preliminary injunctions are not "rare or practically unattainable." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 977 (Fed. Cir. 1996). Rather, a preliminary injunction must be "thoroughly justified." *Id.*

In deciding whether to grant a preliminary injunction, the Court must consider four factors: (1) the likelihood of success on the merits; (2) irreparable harm if an injunction

is not granted; (3) the balance of hardships; and (4) the impact on the public interest. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 714 F. Supp. 2d 919, 922 (E.D. Wis. May 20, 2010) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)), *aff'd in part, vacated in part*, No. 2010-1382, 2011 WL 2161072 (Fed. Cir. Jun. 01, 2011). "No single factor, taken individually, mandates [granting a preliminary injunction]," however, the most important factor is the likelihood of success on the merits, and if the moving party cannot demonstrate that he is likely to succeed, "the remaining factors become matters of idle curiosity." *Id.* (citing *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)). A movant "must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon*, 239 F.3d at 1350)).

## A. Likelihood of Success on the Merits

The first factor is whether the movant is likely to be successful on the merits. In order to establish likelihood of success on the merits, Generac must show that, in light of the presumptions and burdens that will inhere at a trial on the merits, (1) Generac will likely prove that Kohler infringes the '345 patent, and (2) Generac's infringement claim will likely withstand Kohler's challenges to the validity and enforceability of the '345 patent. *See Amazon*, 239 F.3d at 1350. If Kohler raises a "substantial question concerning either

infringement or validity," which Generac cannot prove "lacks substantial merit," the preliminary injunction should not issue. *See id.* at 1350-51.

An assessment of the likelihood of infringement requires a two-step analysis. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). The Court must first determine the scope and meaning of the patent claims asserted and then the properly construed claims are compared to the allegedly infringing device. *Id.* An assessment of the likelihood of validity of a patent claim over prior art also involves a two-step process. *Id.* The first step is the same claim construction used in an infringement analysis and the second step is to compare the asserted claims with the prior art. *Id.*; *see also Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999).

Kohler states that Generac "bears the burden" of demonstrating that it will likely prove infringement. (Def.'s Opp'n Prelim. Inj., 6 n.3.) *see Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003). Kohler has not presented any arguments rebutting Generac's infringement claim and maintains that it "does not concede infringement nor does [Kohler] acquiesce in Generac's proposed claim constructions." (Def.'s Opp'n Prelim. Inj., 6 n.3.) Generac counters that Kohler's "silence results in the concession that Generac is likely to succeed on the merits of its infringement claim." (Pl.'s Reply Prelim. Inj., 2.)

While Kohler does not concede infringement, it fails to address Generac's arguments. Therefore, Kohler has failed to raise a substantial question concerning infringement. Kohler has neither contested nor conceded infringement, however, apparently

Kohler's sole defense to Generac's claim is a challenge to the patent's validity. *See Kimberly-Clark*, 714 F. Supp. 2d at 925. Because Kohler does not challenge the facts asserted by Generac, this Court concludes that Generac will most likely prevail on its allegations that Kohler's generators infringe on the the asserted claims of the '345 patent.

The Court must also assess the likelihood that Generac's patent will survive Kohler's validity and enforceability challenges against the '345 patent. As the party moving for preliminary injunction, Generac "retains the burden of showing a reasonable likelihood that the attack on its patent's validity would fail." *Oakley, Inc.*, 316 F.3d at 1339-40. Generac does not need to prove validity, but it must show that Kohler's invalidity defense lacks substantial merit. *Id.* at 1340. *See also Kimberly-Clark*, 714 F. Supp. 2d at 928 (same); *Anton/Bauer*, 329 F.3d at 1348 (same).

Although a patent shall be presumed valid, 35 U.S.C. § 282, Kohler does not need to make out a case of actual invalidity against the '345 patent at the preliminary injunction stage because "[v]ulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Amazon*, 239 F.3d at 1359. Kohler does not "face the clear and convincing standard" during this stage.[2] *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 2010-1382, 2011 WL 2161072, at *2 (Fed. Cir. June 1, 2011). Therefore, Kohler must put forth a "substantial question of invalidity" to show that the claims at issue are

---

[2]*See Microsoft Corp. v. i4i Ltd. P'ship*, ___ U. S. ___ , 131 S.Ct. 2238, 2246 (2011), (holding that at trial "a defendant raising an invalidity defense bore 'a heavy burden or persuasion,' requiring proof of the defense by clear and convincing evidence. That is, the presumption encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof.")

vulnerable, but the showing of a substantial question of invalidity requires less proof than the clear and convincing standard to show actual validity. *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008).

Kohler challenges the enforceability of the '345 patent based on Generac's allegedly inequitable conduct during the prosecution of the '345 patent. "[T]he remedy for inequitable conduct is the 'atomic bomb' of patent law," and inequitable conduct regarding any single claim renders the entire patent unenforceable. *Therasense, Inc. v. Becton, Dickinson and Co.*, Nos. 2008-1511, 2008-1512, 2008-1513, 2008-1514, 2008-1595, __ F.3d __, 2011 WL 2028255, at *8 (Fed. Cir. May 25, 2011)(*en banc*). At the trial stage, the party alleging inequitable conduct must prove materiality and intent by clear and convincing evidence. *Id.* at *6. *See also Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1373 (Fed. Cir. 2010). However, at the preliminary injunction stage, the party asserting inequitable conduct is only required to show that its challenge has potential merit. *See Anton/Bauer, Inc.*, 329 F.3d at 1348.

Due to the severe consequences of the inequitable conduct defense, the Federal Circuit Court of Appeals has "tighten[ed] the standards for finding both intent and materiality." *Therasense*, 2011 WL 2028255, at *9. Under these heightened standards, Generac has shown that Kohler's inequitable conduct defense lacks substantial merit. The materiality standard required for inequitable conduct is but-for materiality, and the Court must determine whether the PTO would have allowed the claim if it had been aware of the

undisclosed reference. *Id.* at *11. Undisclosed prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. *Id.*

Kohler focuses on the "reasonable examiner" standard for materiality, and whether the reasonable examiner would consider the withheld information important in deciding on the patent. However, the "reasonable examiner" is no longer the standard for the Court to find materiality. *See id.*

Kohler has not shown a reasonable likelihood that the PTO would not have allowed the claims of the '345 patent if it knew of the undisclosed references. Consequently, Kohler has not met the materiality standard to show the '345 patent is vulnerable to its inequitable conduct challenge.

Kohler's enforceability challenge also lacks substantial merit in regards to Generac's level of intent. Kohler relies on the "sliding scale" analysis to show that Generac demonstrated the requisite level of intent, which does not meet the *Therasense* standard for intent. (Def.'s Opp'n Prelim. Inj., 24.) Even if materiality was found, the "sliding scale" analysis should not be used, and intent may not be inferred solely from materiality. *Therasense*, 2011 WL 2028255, at *10. Instead, to prevail, Kohler must show that the '345 patent's enforceability is vulnerable because Generac acted with the specific intent to deceive the PTO. *See id.* at *9. Kohler may use circumstantial evidence to show Generac's deceptive intent, but it "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id.* at *10.

Kohler maintains that Generac failed to disclose the *Generac1* reference[3], but "[p]roving the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* Kohler concludes that Generac acted with specific intent to deceive the PTO because Generac does not dispute that it intentionally withhold the prior art. Generac's implicit concession that the *Generac1* reference was intentionally withheld does not raise a substantial question concerning specific intent to deceive. Generac is not required to provide a good faith explanation for its failure to disclose, "unless the accused infringer first . . . prove[s] [the] threshold level of intent to deceive," which Kohler has not proved. *Id.* at *16. Kohler's inequitable conduct defense lacks substantial merit because Kohler's challenge does not meet the new standards of materiality and intent of *Therasense*. Therefore, Generac has shown that the '345 patent will likely withstand Kohler's enforceability challenge.

The Court next addresses whether the reexamination granted by the PTO is sufficient to raise a substantial question of validity. The "current posture" of the *inter partes* reexamination proceeding at the PTO may be relevant to the question of whether there is a substantial question of validity. *Proctor & Gamble Co.*, 549 F.3d at 847. However, the Court has been "caution[ed]" by the Court of Appeals for the Federal Circuit that "the PTO does not appear to equate the 'substantial new question of patentability' standard for whether

---

[3]Generac and Kohler refer to prior art references *Generac1*, *Generac2*, and *Generac3*. Kohler's request for reexamination discloses that *Generac1* is the Generac Sound Attenuated Emergency Power System Owner's Manual dated November 11, 1998, *Generac 2* is the Generac 4000XL Extended Life Generator's Owner's Manual dated November 15, 1996, and *Generac 3* is the Generac Diagnostic Repair Manual dated September 20, 1994. (Reichenberger Decl. ¶ 2, Ex. A (Reexamination Request), 6.)

reexamination should take place . . . with the 'substantial new question of validity' standard by which a defendant may prevent a patentee from demonstrating a likelihood of success on the merits." *Id.* at 848. "Reexamination proceedings and court actions involving challenges to validity [are] distinct and independent." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 (Fed. Cir. 1990).

At this stage, the PTO has granted an *ex parte* reexamination and an *inter partes* reexamination request. "[A] 'substantial new question of patentability' as to a patent claim could be present even if the examiner would not necessarily reject the claim as either anticipated . . . or obvious," in view of the prior art. *Proctor & Gamble Co.*, 549 F.3d at 848. Furthermore, "a requestor's burden to show that a reexamination order should issue from the PTO is unrelated to a defendant's burden to prove invalidity by clear and convincing evidence at trial." *Id.* The results of a reexamination are relevant to Generac's likelihood of success, but the fact that a reexamination has been granted does not itself show a substantial question of validity. *Id.* at 847. The granting of a reexamination request – which occurs for 92% of all *ex parte* reexamination requests – does not mean that the patent is invalid. Nor, is it dispositive of whether there is a substantial new question of validity. *See Everett Labs., Inc. v. River's Edge Pharms., LLC*, No. 09-3458 (JLL), 2009 WL 4508584, at *3 n.9 (D.N.J. Nov. 24, 2009). Therefore, the PTO's granting of Kohler's reexamination request does not by itself raise a substantial new question of validity for preliminary injunction purposes.

Kohler challenges the validity of Generac's '345 patent based on relevant teachings in prior art not disclosed by Generac. Generac counters that all the prior art references cited by Kohler are merely "cumulative of the prior art already considered by the [PTO] in allowing the '345 patent." (Pl.'s Mem. Supp. Prelim. Inj., 15.) Kohler contends that prior art, *Generac1*, teaches manual and automatic selection of a "generator exercise mode," and that exercising a generator at reduced speeds results in reduced noise levels. (Def.'s Opp'n Prelim. Inj., 10.) Generac counters that the *Generac1* specifications are for multiple models of fixed-speed generators. As such, it asserts that the speeds cannot be decreased on the individual generators and the noise level depends on which generator model is being used. (Pl.'s Reply Prelim. Inj., 4.) The specifications from *Generac1* were disclosed by Generac and show that *Generac1* is not capable of reducing noise by reducing speed in a single generator.

However, the *Generac2* reference cited by Kohler raises a substantial question of invalidity. The *Generac2* manual states that this generator has a "non-operation mode operating at a speed below normal operation," (Pl.'s Mem. Supp. Prelim. Inj., 15), and this "automatic idle control . . . reduces engine speed to 67% of normal operating speed." (Def.'s Opp'n Prelim. Inj., 10.) Despite such language, Generac asserts that none of the prior art references "discloses a method for exercising a generator using only an exercise speed that is less than the operating speed of the generator." (Pl.'s Mem. Supp. Prelim. Inj., 15.) Generac further states that Kohler does not have a prior art reference that teaches a method of

exercising a generator at a speed less than the operating speed of the generator, as claimed in the '345 patent. (Pl.'s Reply Prelim. Inj., 3.)

While there is a difference between operating and exercising a generator, (Pl.'s Mem. Supp. Prelim. Inj., 9-10), *Generac2* teaches that a non-operation mode reduces engine speed to 67% of the operating speed, which falls in the range that Generac cites as the exercise speed of the '345. (Pl.'s Mem. Supp. Prelim Inj., 9.) The *Generac2* "non-operation" mode runs at "a speed below normal operation," cited by Generac as the definition of an exercise mode. (*Id.* at 10, 15.) The *Generac2* reference cited by Kohler is not cumulative of the prior art submitted by Generac. As a result, Generac has not demonstrated that Kohler's invalidity defense lacks substantial merit.

Kohler also contends that the teachings of the prior art references not disclosed by Generac, most notably *Generac1* and *Generac2*, "render all of the claims in the '345 patent obvious." (Def.'s Opp'n Prelim. Inj., 11.) Section 103 of Title 35 of the United States Code states that "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains" then the invention is obvious and the patent is invalid. Furthermore, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). When there is "a design need or market pressure to solve a problem [with]

. . . a finite number of identified, predictable solutions, a person of ordinary skill has reason to pursue the known options within his or her technical grasp." *Id.* at 421.

In the '345 patent, Generac states that current generators produce "unwanted noise," and as a result, "various attempts" have been made to solve this problem. (Compl., Ex. A.) There is a known need with engine-driven generators to reduce the noise they produce, and this "market pressure" has pushed the industry to investigate ways to produce generators that are quieter when they are exercised. (Def's Opp'n Prelim. Inj., 14.)

Claim 1 of the '345 patent claims that this new method of exercising the generator requires the steps of selecting a generator exercise mode and running the engine at a predetermined exercise speed which is less than the predetermined operating speed. (*Id.* at 12) The Court concludes this new method is obvious in light of *Generac1* and *Generac2*, which when taken together teach that a reduction in the engine speed with a manual and automatic selection of exercise mode, or an automatic idle control, can produce a generator which exercises at reduced speeds and reduced noise levels.

The familiar elements of an exercise mode being selected, manually or automatically, and being used at a lower speed than the operating speed yields a predictable result, reduction of the noise produced by the generator while exercising. The *Generac1* reference illustrates a weekly exercise cycle, with automatic or manual selection of the cycle, and *Generac2* states that the generator will run at idle control at reduced speed, which will reduce noise levels.

The modification of *Generac1*, in light of *Generac2*, along with the teachings of *Generac3* which claims that "[a]ny reduction in driven speed and frequency will result in a corresponding decrease in the output voltage," (Def.'s Opp'n Prelim. Inj., 14), would allow a person of ordinary skill in the art to implement a predictable variation of the '345 patent, and § 103 likely bars its patentability. *See KSR Int'l Co.*, 550 U.S. at 417. Using the undisclosed prior art, it would have been obvious for a person of ordinary skill to create a method of exercising a generator at a speed less than the operating speed to reduce the noise, which is what the '345 patent claims. Thus, the Court concludes that Kohler has met its burden of proposing a substantial question of invalidity in light of the undisclosed prior art, and Generac has failed to demonstrate that Kohler's defense lacks substantial merit.

## B. Irreparable Harm

"Irreparable harm is presumed when a clear showing of patent validity and infringement has been made." *Amazon*, 239 F.3d at 1350. Although Generac will likely prove that Kohler infringes on the '345 patent, it has not shown that the infringement claim will likely withstand Kohler's challenges to the validity of the '345 patent. *See id.* Therefore, Generac is not entitled to a presumption of irreparable harm.

The movant must establish facts entitling it to a presumption of irreparable harm because without a clear showing of validity and infringement, "a presumption of irreparable harm does not arise in a preliminary injunction stage." *Nutrition 21*, 930 F.2d at 871. Generac states that, because the parties are direct competitors in the generator market, it will suffer

irreparable harm if the preliminary injunction is not granted. Specifically, Generac states that it will suffer price erosion and loss of market share "[i]f Kohler is given the opportunity to build its market share in reliance on Generac's patented exercise method." (Pl.'s Mem. Supp. Prelim. Inj., 23.) Difficulty in calculating losses or speculation that losses might occur is sufficient proof of special circumstances justifying the "extraordinary relief" of an injunction prior to trial. *See Nutrition 21*, 930 F.2d at 871. "Lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction . . . [G]ranting preliminary injunctions on the basis of speculative loss of market share would result in granting preliminary injunctions 'in every patent case.'" *Automated Merch. Sys.*, 357 Fed. Appx. at 301.

Generac asserts that it will experience a loss in market share or price erosion absent a preliminary injunction. However, it has not presented any evidence of actual or future losses to support its conclusion. Generac's argument relies only upon its status as a direct competitor of Kohler. Generac states that Kohler has captured 10 to 15% of the residential stand-by generator market and that Kohler maintains "tremendous" name recognition and goodwill in the market. (Pl.'s Mem. Supp. Prelim. Inj., 23.) However, Generac does not present any evidence indicating that Kohler's success resulted from the use of the allegedly infringing generators. (*Id.*) Generac has failed to "create a link" between lost sales of its generators and sales of allegedly infringing generators. *See Kimberly-Clark Worldwide, Inc. v. Tyco Healthcare Group LP*, 635 F. Supp. 2d 870, 881 (E.D. Wis. 2009). Because Generac

has not provided sufficient evidence and it is not entitled to a presumption of irreparable harm, Generac has failed to establish that it will suffer irreparable harm absent the issuance of a preliminary injunction.

Because "case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors; i.e., likelihood of success on the merits and irreparable harm," Generac is not entitled to a preliminary injunction.  *See Amazon*, 239 F.3d at 1350.  Therefore, the Court need not address the remaining factors for deciding whether to grant a preliminary injunction  – the balance of hardships and the impact on the public interest.

In conclusion, for the reasons stated above, Kohler's motion to stay litigation pending reexamination of the '345 patent by the PTO is granted. Additionally, Generac's motion for a preliminary injunction is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1.      Kohler's motion to stay the litigation [Docket No. 12] is **GRANTED**;

2.      Generac's  motion for a preliminary injunction [Docket No. 17] is **DENIED**;

3.      Either party may request relief from the stay upon filing a statement advising the Court that the PTO actions with respect to the two re-examination proceedings have been completed;

4.     The Clerk of Court is **DIRECTED** to close this matter for statistical

purposes only.   The matter will be reopened upon the filing of a statement advising the Court

that the PTO actions with respect to the two re-examination proceedings have been completed.

Dated at Milwaukee, Wisconsin, this 5th day of July, 2011.

**BY THE COURT**


_s/ Rudolph T. Randa_
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**